**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JUSTIN SIGHTLER,

        Plaintiff,

v.                                                             Case No. 6:15-cv-273-Orl-37GJK

REMINGTON COLLEGE,

        Defendant.

**ORDER**

This cause is before the Court on the following:

1. Defendant's Motion to Dismiss and to Compel Arbitration (Doc. 7), filed March 20, 2013;

2. Plaintiff's Response to Defendant's Motion to Dismiss and to Compel Arbitration (Doc. 8), filed April 3, 2015; and

3. Defendant's Reply in Support of Motion to Dismiss and Compel Arbitration (Doc. 11), filed April 24, 2015.

Upon consideration, the Court finds that the motion is due to be granted in part and denied in part.

**BACKGROUND**

On December 2, 2013, Defendant Remington College expelled Plaintiff Justin Sightler from its "accelerated registered nursing program," allegedly because Plaintiff repeatedly fell asleep during "clinicals." (Doc. 1, ¶¶ 6, 22.) Plaintiff claims that the sleeping incidents were the result of his fatigue-inducing "chronic condition," which Defendant knew about and failed to accommodate. (*Id.* ¶¶ 8, 28–29, 34.) Plaintiff accordingly brings

this disability-discrimination action against Defendant under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Rehabilitation Act, 29 U.S.C. § 701. (*Id.* ¶¶ 1, 24–36.)

Defendant moves to compel arbitration and dismiss this action. (Docs. 7, 11.) Plaintiff opposes. (Doc. 8.) The matter is ripe for adjudication.

## STANDARDS

Under the Federal Arbitration Act ("FAA"), "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (citation and internal quotation marks omitted). Upon the motion of any party to a valid arbitration agreement, courts must stay litigation of all claims that fall within the agreement's scope and compel arbitration according to the agreement's terms. *See* 9 U.S.C. §§ 3–4. Arbitration agreements are presumptively valid and enforceable. *See id.* § 2.

However, arbitration under the FAA is ultimately "a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989), and parties opposing arbitration can challenge the formation and validity of a contract containing an arbitration clause. Specifically, the U.S. Court of Appeals for the Eleventh Circuit recognizes "three distinct types of challenges to a contract containing an arbitration clause": (1) challenges to the formation, or "the very existence," of the contract; (2) challenges "to the validity of the arbitration clause standing alone"; and (3) challenges "to the validity of the contract as a whole." *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015). Courts resolve challenges to contract formation, *see Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010), as well as challenges to the validity

of the arbitration provision standing alone, *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Arbitrators resolve challenges to the validity of the contract as a whole. *Id.*

> There is thus a two-step process required in considering the arbitrability of any contract containing an arbitration clause: 1) resolution of any formation challenge to the contract containing the arbitration clause, in keeping with *Granite Rock*; and 2) determination of whether any subsequent challenges are to the entire agreement, or to the arbitration clause specifically, in keeping with *Prima Paint.*"

*Solymar Invs., Ltd. v. Banco Santander S.A.,* 672 F.3d 981, 990 (11th Cir. 2012).

## DISCUSSION

Defendant moves to compel arbitration pursuant to the "Enrollment Agreement" attached to its motion. (Docs. 7, 7-1.) The Enrollment Agreement is a standardized contract that the parties signed before Plaintiff began his nursing program, and its provisions address issues ranging from tuition fees and disciplinary procedures to, more pertinently, the mandatory arbitration of "discrimination" claims. (*See* Doc. 7-1, pp. 7–8.)

"Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992). Here, however, Plaintiff argues that the Court should not compel arbitration because "the execution of the arbitration clause, as well as the entire agreement, was done through fraudulent behavior by the Defendant" and because compelling arbitration would prevent him from effectively vindicating his rights under the ADA and the Rehabilitation Act. (*See* Doc. 8, pp. 1–4.) The Court will address each argument in turn.

**I.  Fraud**

Plaintiff's fraud argument turns on his claim that he "never properly executed" the Enrollment Agreement. (*See id.* at 2.) As Plaintiff reads the Enrollment Agreement, proper execution requires a two-step process: first, the student must sign and initial the Enrollment Agreement, then second, he must attend a post-signing "follow up consultation" with a Campus Representative, who explains "the nature and intricacies" of the document's provisions. (*See id.* at 1, 3.) Plaintiff concedes that he "signed and initialed" the Enrollment Agreement, but he maintains that he never attended a follow-up consultation and thus "never properly executed" the contract. (*See id.* at 2–3.) On that basis, Plaintiff argues that the entire Enrollment Agreement—including the arbitration provision therein—is unenforceable. (*Id.* at 2, 4.)

Contradicting Plaintiff's argument, the Enrollment Agreement contains a Campus Representative's signed certification that Plaintiff consulted her on November 15, 2012. (Doc. 7-1, p. 9.) Plaintiff boldly asserts that the certification is "fraudulent"—specifically, that its inclusion in the Enrollment Agreement constitutes fraud in the inducement. (Doc. 8, pp. 3–4.)

The Court is not persuaded. As a threshold matter, the Plaintiff's claim is essentially a fraud-in-the-factum claim, not a fraud-in-the-inducement claim. Fraud in the factum consists of fraud that "occurs within the instrument itself" and concerns "the very nature of the agreement." *Leasing Serv. Corp. v. River City Constr., Inc.*, 743 F.2d 871, 877 (11th Cir. 1984). Forging a party's signature, for example, is a type of fraud in the factum. *Solymar*, 672 F.3d at 995. By contrast, "[f]raud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying

4

transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action." *Id.* at 994 (citation, alteration, and internal quotation marks omitted). Here, Plaintiff claims that the Campus Representative falsely certified that he had "properly executed" the Enrollment Agreement, not that she made some material misrepresentation that induced him into actually doing so. (*See* Doc. 8, pp. 2–4.) Accordingly, Plaintiff's argument substantively aligns with a fraud-in-the-factum claim, and the Court will treat it as such.[1] *See Solymar Investments, Ltd.*, 672 F.3d at 994 (implicitly encouraging courts to disregard the "trappings" and labels of fraud claims and instead to resolve them according to their substance).

A fraud-in-the-factum claim is a contract-formation challenge, so the Court—not an arbitrator—must resolve it. *See id.* at 994 & n.13. To do so, the Court looks to the evidence submitted by the challenging party, as a party "cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists. *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 855 (11th Cir. 1992). To succeed on a fraud-in-the-factum claim, the party denying the existence of a contract "must substantiate the denial of the contract with enough evidence to make the denial colorable." *See id.*

Here, the Court finds that Plaintiff has failed to substantiate his fraud-in-the-factum claim on two levels. First and foundationally, Plaintiff fails to cite any provision of the Enrollment Agreement that addresses "proper execution" or a post-signing "follow-up

---

[1] To the extent that Plaintiff intended to raise a fraud-in-the-inducement claim, that claim would necessarily implicate "the entire agreement" (Doc. 8, p. 3), and thus it would require arbitral resolution. *See Prima Paint*, 388 U.S. at 403–04.

consultation" with a Campus Representative (*see* Doc. 8), and in the Court's review, no such provision exists (*see* Doc. 7-1). In fact, execution of the Enrollment Agreement appears to require only a signature and a date, and, by its express terms, the Enrollment Agreement becomes binding as soon as the student and the Campus *Director* execute it. (*See id.* at 10.) The Campus *Representative* plays only a pre-execution advisory role, and while the Enrollment Agreement contains a space for her to certify that the student attended a *pre-execution* consultation, that certification is not expressly essential to execution. (*See id.* at 9–10.) In short, the central premise of Plaintiff's claim—that "proper" execution of the Enrollment Agreement requires a follow-up consultation with a Campus Representative—lacks support and appears to either mischaracterize or misconstrue the Enrollment Agreement.

Second, even if executing the Enrollment Agreement required a meeting with a Campus Representative, Plaintiff has not substantiated his claim that no such meeting occurred. As addressed above, a Campus Representative signed the Enrollment Agreement and certified that she met with Plaintiff on November 15, 2012. (*Id.* at 9.) Consistent with her certification, all of Plaintiff's initials in the Enrollment Agreement are dated November 15, 2012, as is his signature.[2] (*Id.* at 1–10.)

---

[2] Also relevant but omitted from Plaintiff's briefing (*see* Doc. 8), by signing the Enrollment Agreement—which, again, he admits to doing—Plaintiff certified that he had met with the Campus Representative *prior to* executing the Enrollment Agreement. (Doc. 7-1, p. 9 ("The Student acknowledges by execution of . . . this Agreement that the Student . . . [r]eviewed this Agreement with a Campus Representative prior to [its] execution . . . .").) State law governs contract-formation disputes, *see Solymar*, 672 F.3d at 991, and Florida law presumes that a party signing a contract read and understood the contract's provisions, *see, e.g.*, *Univ. of Miami v. Intuitive Surgical, Inc.*, 166 F. App'x 450, 453 (11th Cir. 2006). Plaintiff offers no explanation for why he certified that the meeting occurred if, in fact, it did not. (*See* Doc. 8.)

To discredit the Campus Representative's certification, Plaintiff relies entirely on the irregular appearance of several dates in the Enrollment Agreement. (*See* Doc. 8, pp. 2–3.) Specifically, in the November 15, 2012 dates accompanying Plaintiff's signature and initials, the "1" digit in the number "15" appears to have been added after the "5" digit.[3] (*See* Doc. 7-1, pp. 1–8.) Plaintiff maintains that he signed and dated the Enrollment Agreement on November 5, and he speculates that the Campus Representative added the "1" digit to his dates ten days later so that they corresponded to her allegedly fraudulent November 15 certification. (*See* Doc. 8, pp. 2–3.)

The problem with Plaintiff's argument is that it lacks evidentiary support. Plaintiff's filings are unverified (*see* Docs. 1, 8), and he has not submitted a supporting affidavit or any other evidence to corroborate his contention that the Campus Representative fraudulently altered the dates of his signature and initials. Further, the Enrollment Agreement does not, on its own, substantiate Plaintiff's argument because, while the dates therein appear to have been altered, the reason for their alteration is not self-evident and could be entirely innocuous. Ultimately, Plaintiff bears the burden of producing at least "some evidence" to substantiate his claim that he never consulted with the Campus Representative, *see Chastain*, 957 F.2d at 854, and, on the present record, the Court cannot find that Plaintiff has met that burden. *See Madura v. Countrywide Home Loans, Inc.*, 344 F. App'x 509, 514 n.7 (11th Cir. 2009) (observing that a plaintiff could not prevail on his fraud-in-the-factum forgery claim because he failed to provide supporting evidence).

---

[3] The "1" digit is typically smaller and darker than the other digits in the dates, and the spacing around it is tighter. (*See* Doc. 7-1, pp. 1–8.)

In sum then, Plaintiff has not substantiated his claim that a meeting with a Campus Representative was necessary to the Enrollment Agreement's execution, nor has he substantiated his claim that, if a meeting were necessary, no such meeting occurred. (*See* Doc. 8.) Accordingly, the Court rejects Plaintiff's fraud argument.[4]

## II.   Effective Vindication

Plaintiff alternatively argues that the potential costs and fees associated with arbitration are so much higher than those associated with litigation in federal court that compelling arbitration would "defeat the remedial purpose" of the ADA and the Rehabilitation Act. (*See id.* at 2–4.) The Court construes Plaintiff's argument as an "effective vindication" challenge to the validity of the Enrollment Agreement's arbitration provision, requiring Court resolution. *See Prima Paint*, 388 U.S. at 403–04 (holding that challenges to the validity of the arbitration provision itself require court resolution).

The effective vindication doctrine permits courts to invalidate arbitration provisions that "prevent the 'effective vindication' of a federal statutory right." *Italian Colors Rest.*, 133 S. Ct. at 2310. One way an arbitration provision can prevent effective vindication of a federal statutory right is by imposing costs and fees that make arbitration "prohibitively expensive." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). The effective vindication doctrine requires a case-by-case inquiry, and the "party seek[ing] to

---

[4] Plaintiff's fraud argument could have been clearer. For the sake of thoroughness, the Court notes that there are theories of fraud in the factum that turn on whether a forged portion of a contract renders the contract's character or essential terms misleading. *See, e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558, 1566 (11th Cir. 1991). To the extent that Plaintiff intended to proceed under such a theory, the Court rejects Plaintiff's argument for lack of evidence that he misunderstood or was misled by any part of the Enrollment Agreement.

8

invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. To discharge that burden, the party seeking invalidation has "an obligation to offer evidence of the amount of fees he is likely to incur, as well as of his inability to pay those fees." *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1260 (11th Cir. 2003).

Here, Plaintiff cites an American Arbitration Association fee schedule as evidence that he "may incur cost[s] upward of $2,000." (Doc. 8, p. 4 (citing Doc. 8-1).) However, Plaintiff does not provide any evidence that he is *likely* to incur those costs, nor does he provide any evidence of his inability to pay those costs. (*See id.*) As both are required to prevail on an effective vindication challenge, *Musnick*, 325 F.3d at 1260, and neither has been provided in this case (*see* Doc. 8), Plaintiff's effective vindication challenge must fail. *See Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) (rejecting an effective vindication challenge for lack of supporting evidence).

**CONCLUSION**

For the reasons addressed above, the Court finds that Defendant's motion to compel arbitration of Plaintiff's claims is due to be granted, subject to one caveat. Defendant requests that the Court *dismiss* this action in addition to compelling arbitration. (Doc. 7, p. 5.) However, the Eleventh Circuit directs that, "[u]pon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration," not dismissed. *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). The Court will therefore compel arbitration and stay this action during the arbitration's pendency.

9

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Dismiss and to Compel Arbitration (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**.

    a. The motion is **DENIED** to the extent that Defendant seeks dismissal of this action.

    b. In all other respects, the motion is **GRANTED**.

2. Plaintiff is **COMPELLED** to arbitrate his claims pursuant to the terms of the Enrollment Agreement (Doc. 7-1).

3. This action is **STAYED** pending arbitration.

4. The parties are **DIRECTED** to jointly notify the Court of the status of the arbitral proceedings on October 16, 2015, and every ninety (90) days thereafter. The parties are further **DIRECTED** to immediately notify the Court upon conclusion of the arbitral proceedings.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 20, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

10